**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Anthony KREISER, Defendant–Appellant.**

No. 92–2973.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 8, 1993.

Decided Jan. 26, 1994.

Bennett E. Kaplan (argued), Barry R. Elden, Asst. U.S. Atty., Office of the U.S. Atty., Crim. Receiving, Appellate Div., Chicago, IL, for plaintiff-appellee.

Allan A. Ackerman (argued), Chicago, IL, for defendant-appellant.

Before POSNER, Chief Judge, and BAUER and EASTERBROOK, Circuit Judges.

BAUER, Circuit Judge.

A jury found Anthony Kreiser guilty of one count of knowingly and intentionally conspiring to distribute and to possess with the intent to distribute cocaine and one count of possession with the intent to distribute cocaine in violation of 21 U.S.C. §§ 846 and 841(a)(1) and 18 U.S.C. § 2. Kreiser appeals his conviction.

## I.

This case begins with the wheeling and dealing of Remis Chacon, Kreiser's codefendant at trial. Chacon was also Kreiser's co-conspirator in the cocaine scheme for which the jury convicted Kreiser. Kreiser himself was not implicated until the very end of their plot.

On March 19, 1991, Drug Enforcement Agency ("DEA") informant Chris Evans told Remis Chacon over the telephone that he wanted to meet him. Two days and two phone calls later, Evans and Chacon met for dinner at the Trattoria Roma Restaurant in Chicago. Kreiser was then an employee at the Trattoria. Evans told Chacon that he was interested in brokering a cocaine deal and that he had a buyer interested in purchasing at least one kilogram of cocaine. Chacon said that he could deliver at least five kilograms of cocaine at a price of $27,000 per kilogram and suggested that the two of them meet with Evans' buyer. Chacon explained that if the buyer showed him the money, he would arrange for the delivery of the cocaine at a nearby location. At the end of the meal, Evans told Chacon that he would call him when the buyer was ready.

On March 26, 1991, after another phone conversation, Evans and Chacon met a second time at the Trattoria. Evans explained over dinner that his buyer would be ready with the money in about a week, that he had a buyer who worked with the buyer's brother, and that the buyer's brother could handle picking up the cocaine at a different location. Chacon told Evans to call him when his buyer was ready.

On April 2, 1991, Evans and Chacon spoke on the phone again. Evans told Chacon that his buyer was ready and that the three of them could meet the following day. They agreed to meet at the Original Mitchell's Restaurant in Chicago. On the morning of April 3, 1991, Evans, undercover DEA agent Kirk Meyer, and undercover DEA agent Kevin Quinn drove to Mitchell's. Meyer played the role of cocaine buyer and Quinn acted as Meyer's brother. Meyer brought $30,000 in cash to use for the cocaine purchase. Meyer and Evans got out of the car at Mitchell's and Quinn parked on a street near the restaurant.

Evans and Meyer entered Mitchell's and met Chacon at a booth in the restaurant. After a few minutes of general conversation, Chacon got up from the booth and walked out of Mitchell's. When Chacon returned, he handed Evans a set of keys to a black Renault that was parked at a nearby intersection and sent Meyer to call Quinn. The plan was for Quinn to pick up the cocaine from the Renault while Meyer remained at Mitchell's with the money. From a pay telephone at Mitchell's, Meyer called Quinn's mobile phone. Meyer directed Quinn to come to Mitchell's and pick up the keys to the Renault. Quinn followed Meyer's directions, picked up the keys, and went to the Renault. He opened the Renault and searched the car, but did not find the promised cocaine. Quinn returned to his car and notified the DEA that he was unable to find the cocaine. Back at Mitchell's, Chacon became concerned because Quinn had not returned. Meyer told Chacon that he would call Quinn and tell him to bring the keys to Mitchell's after he found the cocaine. Meyer tried to call Quinn, but was unable to reach him. He then called another DEA agent who explained what hap-

pened. Meyer returned to the booth and told Chacon that Quinn had searched the Renault but did not find the cocaine. Chacon told Meyer that the cocaine was under the front passenger seat. Meyer then called Quinn back and told him the precise location of the cocaine.

Quinn returned to the Renault and found a bag containing a brick of white powder. Quinn tested the powder with a field test kit. His test showed that it was cocaine. Quinn put the cocaine back in the Renault, returned to his car, and drove back to Mitchell's. Quinn entered Mitchell's and placed the keys to the Renault on the table of the booth. Quinn and Meyer then arrested Chacon.

Moments after Quinn left the Renault, Kreiser walked up to the Renault, looked around, and got in the car. Kreiser sat down in the driver's seat, pushed the front passenger seat forward, bent over, and reached down behind the front passenger seat. DEA Special Agent Allen Doescher, who was watching the Renault from across the street, approached the driver's side of the Renault. Doescher identified himself as a police officer and asked Kreiser what he was doing in the Renault. Kreiser responded: "I don't know what you're talking about." Tr. at 229. Doescher then asked Kreiser who owned the Renault and Kreiser answered that he did not know.

Doescher and another agent then arrested Kreiser, advised him of his rights, and searched him. Inside Kreiser's wallet, Doescher found a retired Chicago Police Officer's badge and asked Kreiser if the badge belonged to him. Kreiser told Doescher that the badge belonged to him, that he recently retired from the police force, and then pleaded, "Hey, come on, guys, why don't you give me a break." Tr. at 231. The agents also recovered a lighter and an AT & T phone card from Kreiser. Printed on the side of the lighter was the name and address of the Trattoria, where Kreiser worked. The AT & T card listed the number and name of Amelia Gomez.

Shortly after his arrest, a DEA agent asked Kreiser whether he owned the Renault and, if he did not, whether he knew who owned it. Kreiser answered "no" to both

questions. Tr. at 260. Later, the agent asked Kreiser what he was doing inside the Renault. Kreiser first said that he did not know what the agent was talking about, but later added "maybe I was looking for somebody." Tr. at 261. When asked what he meant by that comment, Kreiser shrugged and said, "I don't know." *Id.* Kreiser also denied knowing Chacon.

The Renault was registered to Amelia Gomez at 1535 North Wells in Chicago. This was the address of the Trattoria before it moved. Found on the seat of the Renault was a magazine. The address label on the magazine listed the Trattoria at 1535 North Wells. Agents also recovered from the Renault a cigarette box that contained cocaine.

On April 16, 1991, the DEA attempted to serve a subpoena on Amelia Gomez at 1514 North Honore in Chicago. On the mailbox of the third floor apartment of the building at that location were the names "Gomez" and "Kreiser." A utility bill discovered by DEA agents in the lobby of the building was addressed to Amelia Gomez at the same apartment. When DEA agents knocked on the door of the apartment, Kreiser answered while wearing only a t-shirt and undershorts.

After his arrest, Chacon told the DEA that, about a week prior to April 3, 1991, he met with his cocaine supplier and discussed the April 3, 1991 transaction. Chacon stated that he planned to charge $27,000 for the kilogram of cocaine. He said that when he left Mitchell's, he went to meet his cocaine source and get the keys to the Renault. He also said that he was going to give $25,000 of the money to his source, while he and Evans would split the remaining $2,000.

The DEA recovered a business card from Chacon after arresting him. On the back of the business card, someone wrote the name "Tony Keiser" or "Tony Keises"—the writing was somewhat illegible—and the same telephone number that was on the AT & T card recovered from Kreiser. Tr. at 285. The DEA obtained telephone records for March and April 1991 for the telephone numbers registered to Chacon's residence, Kreiser's residence, and the Trattoria. Between February 22, 1991 and April 2, 1991 eight telephone calls were made from Kreiser's resi-

dence to Chacon's residence. The last of the eight calls was made on the evening of April 2, 1991. During the period from March 20, 1991 to April 2, 1991, fifteen calls were placed from Chacon's residence to Evans' pager. On March 19, 1991 and April 2, 1991, telephone calls were placed from Kreiser's residence to Evans' beeper.

Chacon and Kreiser were tried together. The jury found both of them guilty. The district court sentenced Kreiser to seventy-eight months in prison.

## II.

Kreiser raises two issues on appeal. First, he claims that the district court's decision to admit into evidence redacted, post-arrest statements by Chacon violated Kreiser's rights under the Sixth Amendment's Confrontation Clause. Second, Kreiser contends that the trial court erred when it admitted evidence of conduct of a 1984 drug transaction in which Kreiser participated.

### A. Confrontation Clause

Kreiser argues that the admission at trial of certain redacted post-arrest statements made by Chacon violated the Sixth Amendment's Confrontation Clause. That provision provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. At trial, a DEA agent testified about statements that Chacon made after he was arrested. According to the agent, Chacon said that on April 3, 1991, "he had left the Original Mitchell's Restaurant and met with the source of supply for one kilogram and received the keys to the car, and those were the keys that he said he had placed on the table inside of the Original Mitchell's thereafter." Tr. at 283–84. This statement was a redacted version of Chacon's actual assertion that he received the keys from Kreiser. The government substituted "source" for "Kreiser" and the district court admitted the redacted statement. Kreiser contends that, this being a two-person case, the "source" referred to in Chacon's statement could only have been Kreiser. Chacon did not testify and, so the

argument goes, Kreiser was therefore unable to "confront" Chacon.

The right of an accused "to be confronted with the witnesses against him" includes the right to cross-examine witnesses. *Richardson v. Marsh*, 481 U.S. 200, 206, 107 S.Ct. 1702, 1706–07, 95 L.Ed.2d 176 (1987). When, as in this case, two defendants are tried jointly, the pre-trial confession of one cannot be admitted against the other unless the confessing defendant takes the stand. *Id.* In some circumstances, the confession cannot be admitted at all. For example, in *Bruton v. United States*, 391 U.S. 123, 126, 88 S.Ct. 1620, 1622–23, 20 L.Ed.2d 476 (1968), the Supreme Court held that a nonconfessing criminal defendant was deprived of his Confrontation Clause right to cross-examine adverse witnesses when his nontestifying codefendant's confession named him as a participant in the crime and was admitted at their joint trial. Jury instructions that directed the jury to consider the confession only against the confessing co-defendant did not cure the Confrontation Clause violation. *Id.*

Kreiser argues that *Bruton* requires reversal of his conviction. His argument ignores the Court's subsequent limitation of *Bruton* in *Richardson*. In that case, like this one, the Court considered the redacted confession of a nontestifying codefendant. In *Richardson*, the confession admitted at trial was redacted to omit any reference to the nonconfessing codefendant. *Richardson*, 481 U.S. at 203, 107 S.Ct. at 1705. At the time the confession was admitted, the jury was admonished not to use it against the nonconfessing defendant and, again, the trial court gave the same instruction after closing arguments. *Id.* at 203, 205, 107 S.Ct. at 1705, 1706. The Court distinguished *Bruton* because the confession in *Richardson* did not facially incriminate the nonconfessing codefendant, but did so only when linked with other evidence. *Id.* at 208, 107 S.Ct. at 208–09. In such a situation, the risk that the jury will not follow proper limiting instructions is lessened as is any potential prejudice to the nonconfessing defendant. The *Richardson* Court held that the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when the confession is redacted to eliminate the nonconfessing defendant's name and any reference to the nonconfessing defendant. *Id.* at 211, 107 S.Ct. at 1709.

■ In this case, the district court admitted the redacted statement and instructed the jury twice that the confession was admissible only against Chacon, once before the statement was admitted, then a second time after closing arguments. Kreiser argues that such a substitution was insufficient because only Kreiser could have been the source in this two-man case. This argument has many problems. First, it is not at all evident that only Kreiser could have been the "source" referred to in Chacon's redacted statement. It is true that only Kreiser and Chacon were tried, but nothing prevented the jury from supposing that a third conspirator—one who was not indicted or tried—participated along with Chacon and Kreiser. And though other evidence at trial suggested that Kreiser was in fact Chacon's source, the *Richardson* Court made clear that such evidentiary linkage does not rise to the level of a Confrontation Clause problem when, as here, the jury is properly instructed to consider the statements only against the confessing codefendant. *See Richardson*, 481 U.S. at 208, 107 S.Ct. at 1708. Even so, in *United States v. Gio*, 7 F.3d 1279 (7th Cir. 1993), we considered—and rejected—a similar *Bruton* issue in a case which, like this one, involved only two co-defendants, a redacted confession, and a limiting jury instruction. We declined in *Gio*, as we do here, to find any Confrontation Clause violation. Simply put, there is no *Bruton* problem when the substitution—here, the word "source"—does not identify the nonconfessing codefendant by race, age, size, or any other means except (though not relevant here) gender. *United States v. Holleman*, 575 F.2d 139, 142 (7th Cir.1978). All of this adds up to one fact: the admission of Chacon's redacted post-arrest statements did not violate Kreiser's Confrontation Clause rights.

## B. Prior Act Evidence

Kreiser raises one other issue. He challenges the admission by the district court of

evidence of two earlier drug transactions that occurred in 1984 and involved Kreiser. Kreiser claims that in so doing, the district court unconstitutionally amended the indictment and violated Rules 403 and 404(b) of the Federal Rules of Evidence.[1]

The testimony about Kreiser's 1984 drug activities came in the form of testimony by three DEA agents. Their testimony indicated that on September 5, 1984 and again on September 13, 1984, Kreiser engaged in two separate one ounce cocaine transactions with undercover DEA agents. On both occasions, an undercover DEA agent met with Kreiser's cocaine partner at a Chicago restaurant and discussed the cocaine purchases. Kreiser's partner directed the agent to go outside the restaurant to Kreiser's parked black Cadillac and retrieve the cocaine. On both occasions, Kreiser was near the car and close enough to observe the deal. Also, Kreiser acted as the supplier of the cocaine. The district court admitted the evidence against Kreiser and instructed the jury, both before the agents testified and after closing arguments, that the evidence was admissible for the limited purpose of Kreiser's knowledge, intent, and motive during the events of 1991. The district court also carefully explained to the jury that Kreiser was not on trial for anything that happened in 1984, but only for the events of 1991.

■ We begin with Kreiser's second assertion—the district court's alleged violation of the Federal Rules of Evidence—and review the district court's decision to admit the challenged evidence for abuse of discretion. *United States v. Flores*, 5 F.3d 1070, 1080 (7th Cir.1993), *cert. denied*, — U.S. —, 114 S.Ct. 884, 127 L.Ed.2d 79 (1994). In determining whether evidence of the sort at

issue here is admissible pursuant to Rules 403 and 404(b), we ask whether:

(1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue, (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

*Id.* (quoting *United States v. Shields*, 999 F.2d 1090, 1099 (7th Cir.1993), *cert. denied*, — U.S. —, 114 S.Ct. 877, 127 L.Ed.2d 74 (1994).

As applied here, first, the evidence of Kreiser's actions established an issue other than Kreiser's propensity to commit the crime charged—namely, his knowledge, motive, and intent in participating in the 1991 cocaine transactions. The 1984 cocaine transactions show that Kreiser was familiar with the cocaine business and was not some hapless fool mistakenly caught up in an overzealous law enforcement action. Second, the 1984 acts are similar enough and close enough in time to be relevant to the 1991 transaction. As to their similarity, the 1984 and the 1991 transactions are remarkably alike: each involved a meeting in a restaurant and directions to the buyer or the buyer's agent to pick up cocaine at a nearby parked car. Also, during all the transactions, Kreiser hovered in the background while awaiting the completion of the deal. As to the time element, seven years is close enough in time for these purposes. *See, e.g. United States v. Goodapple*, 958 F.2d 1402, 1407 (7th Cir.1992) (evidence of transaction

---

1. Rule 403 provides:
   Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.
   Fed.R.Evid. 403. Rule 404(b) provides:
   (b) **Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It

may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.
Fed.R.Evid. 404(b).

five years prior to those charged properly admitted). Third, the evidence at trial, which consisted of the eyewitness testimony of three DEA agents, is easily sufficient to support a finding that Kreiser participated in the 1984 cocaine transactions. Fourth, the probative value of the evidence of the 1984 transactions is not substantially outweighed by the danger of unfair prejudice.

■ Finally, we consider Kreiser's argument that the admission of the evidence unconstitutionally amended the indictment. The right to be tried on the charges set out by a grand jury in an indictment arises from the Fifth Amendment guarantee that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. amend. V; *see also United States v. Miller*, 471 U.S. 130, 136, 105 S.Ct. 1811, 1815, 85 L.Ed.2d 99 (1985) (discussing the right to be tried on charges returned by a grand jury). In this case, the district court, as we have explained, twice instructed the jury to consider the evidence of the 1984 cocaine transactions only for the limited purpose of showing Kreiser's knowledge, intent, and motive. The court also explained to the jury that Kreiser was "not on trial in this case for anything that happened in 1984," but was "only on trial for what either did or did not happen in 1991." Tr. at 337.

We, of course, presume that juries follow their instructions and nothing about the evidence of Kreiser's 1984 transactions or any other evidence at trial rebuts that strong presumption. This leads us to a rather obvious conclusion: there was no unconstitutional expansion of the indictment in this case because the indictment was not expanded. Kreiser was tried and convicted for his participation in events of 1991, not the events of 1984.

### III.

Anthony Kreiser's conviction is AFFIRMED.