**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Myro L. WILSON, Defendant–Appellant.**

No. 94–1148.

United States Court of Appeals,
Seventh Circuit.

Argued July 6, 1994.

Decided Aug. 2, 1994.

Edith C. Harris (argued), Office of U.S. Atty., Springfield, IL, for plaintiff-appellee.

Jon G. Noll (argued), Springfield, IL, for defendant-appellant.

Before BAUER, COFFEY and KANNE, Circuit Judges.

COFFEY, Circuit Judge.

Myro L. Wilson was convicted by a jury of three counts of distribution of cocaine base in violation of 21 U.S.C. § 841(a)(1), and was sentenced to 63 months of imprisonment. He appeals, challenging the sufficiency of the evidence and the admission of evidence of other misconduct. *See* Fed.R.Evid. 404(b). Wilson also appeals his sentence, contending that the district court improperly considered an uncharged drug sale as "relevant conduct" under U.S.S.G. § 1B1.3(a)(2) in calculating his base offense level. We affirm.

## I. Background

In September of 1991, the police became aware of Wilson's involvement in cocaine trafficking while investigating the activities of drug dealer, Hernando Wilson ("Hernando"), who is Wilson's uncle. On September 16, 1991, Rhea Taylor, a confidential informant, told Special Agent Benjamin O'Neal that he could purchase drugs from Wilson or Darian Wilson ("Darian"), who is also a nephew of Hernando's. Acting as a go-between for Agent O'Neal and under the surveillance of O'Neal as well as other law enforcement officers parked nearby, Taylor went to Darian's residence, but was told by Darian to go to 56 Brandon to make the purchase. At 56 Brandon, which was a few blocks away, Taylor was greeted by Wilson who resided there. While waiting for Darian to arrive, Wilson asked where the buyer was waiting and whether the buyer had a scale with him. Wilson also showed Taylor the cocaine. Shortly after, Darian joined them and discussed the price with Taylor, and the three of them talked about diluting the cocaine with baking soda. Taylor was given half an ounce of cocaine. He took the cocaine to Agent O'Neal, who was waiting in a parked car, and returned later with the purchase money. The cocaine weighed 13.6 grams. The con-

versations were taped. Wilson was not charged with this drug sale.

Four days later, Taylor went to 56 Brandon to make another drug purchase. Wilson stated that he needed to go get the drugs and left the residence. When he returned, he gave one ounce of cocaine to Taylor. Darian was also present at some point during the transaction. As with the previous deal, Taylor took the cocaine to Agent O'Neal for him to test and weigh the drugs. Taylor then returned with $1,800 to the apartment, where he delivered the money to Hernando's mother. The conversations for this transaction were also taped. The amount of cocaine from this purchase was 28.2 grams.

On August 25, 1992, another confidential informant, Jeff Washington, went to 56 Brandon to try to purchase crack cocaine from Hernando. Although Hernando's brother, Flin Wilson, asked Washington to lift up his shirt for Flin to ascertain whether Washington was wearing a transmitting device, the wire transmitter was not observed. Wilson was present in the apartment, and stated, "I've dealt with him before." As with the September 20, 1991 transaction, Wilson left the residence and returned a short time later with the drugs. Because Washington had expressed his desire to purchase an additional amount of crack cocaine while Wilson was gone, Wilson again left the residence to retrieve the additional amount. The three "rocks" of crack cocaine sold contained 2.0 grams of cocaine base.

On September 12, 1992, Stephanie Wilson ("Stephanie"), a confidential informant, also arranged to buy cocaine from Hernando. Stephanie, who was arrested on drug charges, had entered into a cooperation agreement with the government to help convict Hernando. At Hernando's direction, Stephanie met with Wilson near 56 Brandon and received ten "rocks" of crack cocaine, which contained 8.8 grams of cocaine base. Stephanie then paid Hernando two days later for the delivery made by Wilson. The conversation between Stephanie and Wilson was not taped.

At trial, the tape recordings of the September 16, 1991, September 20, 1991, and August 25, 1992 transactions were introduced into evidence. Both of Wilson's uncles, Flin and Hernando, testified against Wilson pursuant to their plea agreements with the government. Hernando admitted directing Wilson to give Stephanie ten "bops" of crack cocaine on September 12, 1992. He also admitted lying to a special agent about his identity. In addition, he testified that he had seen Wilson in possession of cocaine on at least ten occasions. Counsel did not object to the admission of this statement.

All three informants and Agent O'Neal testified as to their respective dealings with Wilson. Counsel objected to the admission of Agent O'Neal's testimony, and later Taylor's testimony, concerning the September 16, 1991 transaction because Wilson was not charged with that transaction. The trial court overruled the objection, finding that the evidence was offered to show "opportunity, knowledge, [and] plan" under Rule 404(b). The court also found that the probative value of the evidence was not outweighed by the prejudicial effect. No limiting instruction was given to the jury as to the intended purpose of the evidence. Counsel also objected to Washington's testimony that he was first introduced to Wilson by Flin for a drug deal at 56 Brandon sometime between January and March of 1992. The trial court overruled the objection based on the government's argument that the evidence was offered for purposes of identification. Wilson was convicted of all three distribution counts.

## II. Analysis

### A. Sufficiency of the Evidence

Wilson challenges the sufficiency of the evidence to sustain his convictions, contending essentially that the government's witnesses were all inherently unreliable witnesses because they were themselves drug dealers, drug addicts, convicted felons, paid informants, and cooperating defendants, and because their testimony was peppered with inconsistencies.

When reviewing for sufficiency of the evidence, we consider the evidence and accompanying inferences in the light most favorable to the government and will reverse only if there is no evidence from which the

**514**

jury could find guilt beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 309, 99 S.Ct. 2781, 2783, 61 L.Ed.2d 560 (1979); *United States v. Dortch,* 5 F.3d 1056, 1065 (7th Cir.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 1077, 127 L.Ed.2d 394 (1994). Unless the evidence is "contrary to the laws of nature ... or is so improbable on its face that no reasonable factfinder could accept it," *United States v. Saunders,* 973 F.2d 1354, 1358 (7th Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 1026, 122 L.Ed.2d 171 (1993); *see also United States v. Lozoya–Morales,* 931 F.2d 1216, 1217 (7th Cir.1991); *United States v. Mejia,* 909 F.2d 242, 245 (7th Cir. 1990), we will not reweigh the evidence or evaluate the credibility of witnesses. *Dortch,* 5 F.3d at 1065; *Mejia,* 909 F.2d at 245 ("Credibility is for the jury, not this Court, to determine."). This is true even if the evidence is "totally uncorroborated and comes from an admitted liar, convicted felon, large-scale drug dealing, paid government informant." *United States v. Davis,* 15 F.3d 1393, 1398 (7th Cir.1994) (citing *United States v. Molinaro,* 877 F.2d 1341, 1347 (7th Cir.1989)).

■ Here, Wilson's convictions were supported by ample evidence, which was not inherently unbelievable or improbable. The first two charged transactions were supported by not only the informants' testimony, but also the tape recordings of the transactions which corroborated the informants' testimony. The third charged transaction was supported by both the informant's testimony and the admission of Hernando Wilson. Additionally, all three transactions were corroborated by the cocaine delivered to the authorities by the informants.

It is true that the testimony of the government witnesses contained some inconsistencies. For instance, Taylor testified that he had always been truthful to Agent O'Neal, but O'Neal stated that Taylor had once lied to him during the investigation of another case. Similarly, Taylor's testimony as to when he reviewed the tape recordings was contradicted by that of a government agent. Also, Flin Wilson did not testify consistently about whether he was intoxicated the day Washington came to buy the drugs and

whether he was looking for drugs or wires when he asked Washington to lift his shirt. Nor was Hernando's testimony as to his method of transporting cocaine entirely consistent with the testimony of other government witnesses. However, all of the inconsistencies were tangential to the core events surrounding the crime. *See Saunders,* 973 F.2d at 1359. More importantly, "mere inconsistencies in the witnesses' testimony do not render it legally incredible." *Lozoya–Morales,* 931 F.2d at 1218 (citing *United States v. Dunigan,* 884 F.2d 1010, 1013 (7th Cir.1989)). Thus, the jury was entitled to believe the testimony of the government witnesses in this case, and we will not disturb the jury's resolution of whatever inconsistencies or ambiguities exist in the testimony. *See United States v. Berardi,* 675 F.2d 894, 904 (7th Cir.1982).

## B. Rule 404(b)

Wilson₁ also argues that the trial judge improperly admitted evidence of earlier, uncharged instances of drug sales and possession. Specifically, Wilson objected to the admission of evidence concerning the September 16, 1991 transaction and Washington's statement that he had met Wilson prior to the August 25, 1992 transaction during a drug deal.

■ We review the district court's decision to admit the disputed evidence for an abuse of discretion. *United States v. Evans,* 27 F.3d 1219, 1232 (7th Cir.1994); *United States v. Betts,* 16 F.3d 748, 756 (7th Cir. 1994). Under Federal Rule of Evidence 404(b), evidence of other misconduct is not admissible to show that the defendant acted in conformity therewith, but may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, or identity. In determining the admissibility of Rule 404(b) evidence, the court must determine whether (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence shows that the other act is similar enough and close in time to be relevant to the matter in issue, (3) the evidence is sufficient to support a jury finding that the defen-

dant committed the similar act, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *Evans,* 27 F.3d at 1232; *Betts,* 16 F.3d at 756; *United States v. Kreiser,* 15 F.3d 635, 640 (7th Cir.1994).

■ Applied here, the evidence of the September 16, 1991 transaction is directed to establish a matter in issue other than Wilson's propensity to commit the crime charged; it was used to show opportunity, knowledge, and plan. The transaction sets the stage for the charged transaction occurring four days later in that it establishes a buyer-seller relationship between the informant, or Agent O'Neal, and Wilson. In addition, the taped conversations contained Wilson's discussion about diluting the cocaine with baking soda, and his questions as to whether the prospective buyer had a scale with him, tending to show that Wilson was familiar with the cocaine business and was not some innocent bystander "mistakenly caught up in an overzealous law enforcement." *See Kreiser,* 15 F.3d at 640.

■ Second, the transaction was similar enough and close enough in time to be relevant to the charged September 20, 1991 transaction. The transactions were only four days apart, involving the same parties at the same location. Third, the evidence, which included the taped conversations between Wilson and the government informant Taylor, Taylor's testimony, and the drugs delivered, was sufficient to demonstrate that Wilson committed the similar act. *See United States v. Hubbard,* 22 F.3d 1410, 1418 (7th Cir.1994).

■ Finally, the probative value of the evidence was outweighed by the danger of unfair prejudice. It is true that evidence of the September 16 transaction was extensive, and thus prejudicial to the defendant. It is also troubling that the district court did not give the jury a limiting instruction, although Wilson's counsel did not request the instruction. *Cf. Hubbard,* 22 F.3d at 1418 (prejudicial effect of evidence of prior uncharged drug sale reduced by the limiting instruction the court gave to the jury); *United States v. Emenogha,* 1 F.3d 473, 479 (7th Cir.1993)

(emphasizing district court's great care in giving repeated warnings to jury as to the limited use of the prejudicial evidence); *United States v. Wright,* 943 F.2d 748, 751 (7th Cir.1991) (collection of cases regarding mitigation of possible prejudice by limiting jury instruction). However, the evidence was not unfair or unduly prejudicial because of its strong similarity and close temporal proximity to the charged crime. *See United States v. Scop,* 940 F.2d 1004, 1009 (7th Cir.1991) (evidence not unduly prejudicial because "it concerned truly similar activities rather than inflammatory criminal acts."). Because there was "a principled exercise of discretion" by the district court, *United States v. Zapata,* 871 F.2d 616, 621 (7th Cir.1989); *cf. United States v. Macey,* 8 F.3d 462, 467 (7th Cir.1993) (district court erred in admitting 404(b) evidence where the court did not demonstrate an effort to determine the prejudicial nature of the evidence), we will not disturb the district court's contemporaneous assessment of the relative impact of the legitimate and illegitimate inferences.

■ Similarly, the district court did not clearly err in admitting Washington's testimony that he had met Wilson during a previous drug sale sometime between January and March of 1992. Again, the evidence is directed toward establishing a matter in issue other than Wilson's propensity—it is offered for the purpose of identification of Wilson by Washington and it showed how Washington met Wilson. The transaction occurred at the same location, 56 Brandon, and was six to eight months before the charged August 25, 1992 transaction. *Cf. Kreiser,* 15 F.3d at 641–42 (evidence of transactions seven years prior to those charged properly admitted); *United States v. Goodapple,* 958 F.2d 1402, 1407 (7th Cir.1992) (five years is a sufficiently close nexus); *United States v. Torres,* 977 F.2d 321, 327 (7th Cir.1992) (two years). The testimony was corroborated by Wilson's own taped statement of August 25 that he had dealt with Washington before. It was brief and non-inflammatory in nature, reducing the risk that "the jury's emotion would be stirred by such evidence that they would, as a result, be compelled toward irrationality."

*United States v. Macias,* 930 F.2d 567, 572 (7th Cir.1991).

In addition to the above challenges, Wilson argues that the district court improperly admitted Hernando Wilson's testimony during the government's re-direct that he had seen Wilson in possession of cocaine on at least ten occasions. Because Wilson did not object to the admission of this testimony at trial, the issue is waived on appeal. *United States v. Maholias,* 985 F.2d 869, 876 (7th Cir.1993); *Macias,* 930 F.2d at 571. Although Wilson could have argued that the admission of the testimony constituted plain error, that is, error "of such magnitude that it probably changed the outcome of the trial," *Maholias,* 985 F.2d at 876 (quoting *United States v. Douglas,* 818 F.2d 1317, 1320 (7th Cir.1987)), he did not make this argument, either. In any event, we will reverse for plain error "only when convinced that it is necessary in order to avert an actual miscarriage of justice." *Id.* There is no showing that the exclusion of this statement would have affected the outcome of Wilson's case.

## C. Relevant Conduct

Wilson next challenges the district court's calculation of his base offense level, contending that the court erred in considering the September 16, 1991 transaction as "relevant conduct" under U.S.S.G. § 1B1.3(a)(2). He argues that the only evidence of the uncharged conduct was the unreliable, unsubstantiated testimony of the government informant, Taylor, and that in any event, the conduct was not part of a common scheme or plan as required by U.S.S.G. § 1B1.3(a)(2) because it was not pre-planned.

The determination that an uncharged activity constitutes "relevant conduct" under § 1B1.3(a)(2) is a finding of fact, which will not be disturbed unless it is clearly erroneous. *United States v. Sykes,* 7 F.3d 1331, 1335 (7th Cir.1993). Also, "credibility judgments of witnesses are left to the sound discretion of the district court." *United States v. Campbell,* 985 F.2d 341, 347 (7th Cir.1993). Thus, to the extent that Wilson challenges the credibility of Taylor on appeal, it is without merit, especially given that Tay-

lor's testimony was corroborated by the tape recording of the transaction. *Cf. United States v. Mumford,* 25 F.3d 461, 467 (7th Cir.1994) ("the sentencing court's factual findings can be supported by the testimony of a single witness who is arguably biased against the defendant.").

Equally without merit is Wilson's argument that the sale would have occurred without Wilson's presence, implying that Wilson did not participate in the sale. Wilson was present at the sale. He showed the cocaine to Taylor, inquired about the prospective buyer for whom Taylor was acting as a go-between, and discussed the quantity of the cocaine. By the preponderance of the evidence, *United States v. Banks,* 964 F.2d 687, 692 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 470, 121 L.Ed.2d 377 (1992), the district court could conclude that Wilson participated in the September 16, 1991 transaction. In any event, a sentencing court may attribute to a defendant a quantity of drugs negotiated or sold by other persons, so long as the transaction is the same course of conduct as the offense of conviction. *United States v. Crawford,* 991 F.2d 1328, 1330 (7th Cir.1993). This is true even where the defendant was neither charged with nor convicted of those acts or of conspiracy. *See id.; United States v. Thomas,* 969 F.2d 352, 355 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 274, 121 L.Ed.2d 202 (1992).

In this case, the district court properly found that the September 16 transaction was "part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2); *see also* U.S.S.G. § 3D1.2(d). This court has said that whether the transaction is part of the same course of conduct as the offense of conviction depends upon "the similarity, regularity and temporal proximity of the incidents." *United States v. Montgomery,* 14 F.3d 1189, 1198 (7th Cir.1994) (citing *United States v. Cedano–Rojas,* 999 F.2d 1175, 1180 (7th Cir.1993)). Relevant considerations include whether similar parties were involved in each transaction, the geographical relationship, and any other relationship between the offense of conviction and the relevant conduct. *Crawford,* 991 F.2d at 1331.

Here, the same parties (Taylor, Darian, and Wilson) were involved in both the September 16 and September 20, 1991 transactions. The same type of drug, cocaine powder, was delivered to the same confidential informant at the same location. In both transactions, the confidential informant took the drugs to the supposed buyer, Agent O'Neal, before paying for the drugs. Moreover, the two transactions were only four days apart. *Cf. Cedano-Rojas,* 999 F.2d at 1180 (two-year time lapse between the uncharged drug sales and the convicted offense held to be same course of conduct where the transactions were strongly similar and where the time lapse was not due to the participants' own volition); *see also United States v. Nunez,* 958 F.2d 196, 198 (7th Cir.) (same), *cert. denied,* — U.S. —, 113 S.Ct. 168, 121 L.Ed.2d 115 (1992). Thus, it was not clearly erroneous for the district court to consider the September 16 transaction as "relevant conduct" and attribute the 13.6 grams of cocaine from that sale to Wilson.[1]

Accordingly, the conviction and sentence of Myro Wilson are AFFIRMED.

---

1. Even if the district court erred in including the September 16, 1991 transaction, the error is harmless because Wilson's base offense level would remain the same. The total marijuana equivalent weight of the cocaine and cocaine base from the four transactions was 224,360 grams or (224 kilograms), giving Wilson a base offense level of 26 for 100 to 400 kilograms of marijuana. Without the 13.6 grams of cocaine (or 2720 grams of marijuana equivalent) from the September 16 transaction, Wilson is still accountable for approximately 221 kilograms of marijuana equivalent, which is within the same 100 to 400 kilogram range. *See* U.S.S.G. §§ 2D1.1(a)(3) and (c)(9).