41 F.3d 1511
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Bobbie Joe BLANKENSHIP, Defendant-Appellant.
 No. 93-3224.
 United States Court of Appeals, Seventh Circuit.
 Argued Feb. 24, 1994.
Decided Nov. 18, 1994.
 
 Before FAIRCHILD, CUDAHY and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 A jury found defendant-appellant Bobbie Joe Blankenship ("Blankenship") guilty of bank robbery in violation of 18 U.S.C. Sec. 2113(a). He appeals his conviction. We affirm.
 
 I. BACKGROUND
 
 2
 On August 28, 1992, at approximately 2:15 p.m., a man wearing a dress shirt, baseball cap, and sunglasses stepped up to a teller at the First National Bank of Moline, Illinois, and threw a note down on the counter in front of her. The note informed the teller that this was a robbery. The man, later identified as Timothy Stranger ("Stranger"), took back the note, and put a plastic bag on the counter, which the teller filled with money. Stranger grabbed the bag and ran. The teller pushed an alarm and told her supervisor, and another teller called 911. The bank's security cameras had gotten a picture of Stranger, who later pled guilty to the robbery.
 
 
 3
 Because the proof tending to show aiding and abetting by Blankenship is circumstantial, we recount it in considerable detail.
 
 
 4
 Gregory Pearson ("Pearson"), an auxiliary police officer, was driving his fiancee's car in the vicinity of the bank when he saw two men (at approximately 2:15 to 2:20) standing at the entrance to an alley. Pearson noticed the men because in his view they were acting peculiarly. One man, later identified as Blankenship, was stuffing something down the front of his pants. Pearson parked the car, and kept his eye on the men as he walked to where his own car was parked. The men split up, with Blankenship entering the alley. Pearson followed Blankenship in his car. Blankenship went down the alley and turned onto the street, and again met Stranger; they continued to walk down the street. Pearson assumed that all was well, and proceeded on his way.
 
 
 5
 Not long after, Pearson pulled his car over to talk to a friend of his, Rick Shurtz ("Shurtz"), also an auxiliary police officer. Shurtz had heard over his police scanner that the bank had been robbed, and Pearson mentioned the suspicious activity he had seen. Pearson and Shurtz got into their own vehicles to look for the men. By this time, the men had separated. Pearson evidently found Blankenship, who was walking down the street. While Pearson was following Blankenship, he saw a uniformed sergeant for the Moline Police Department, Greg Crouch ("Crouch"), and stopped to tell him about the activity he had observed. Pearson and Crouch then returned to the bank. Pearson stayed in a parking lot near the bank and Crouch left to look for the suspects.
 
 
 6
 Crouch had previously been searching for suspects, and had passed a man, who he later learned was Blankenship, on the street. He noted that Blankenship appeared suspicious, but did not match the description of the suspect (Crouch only knew Stranger's description at the time). After speaking with Pearson, Crouch found Blankenship seated at a bus stop. He approached Blankenship, identified himself as a police officer, and told Blankenship he was looking for a suspect, describing Stranger. Blankenship said he had not seen him, and had been waiting for a bus for some time. Crouch asked for identification, and Blankenship gave him an out-of-state driver's license. Crouch ran Blankenship's name through the computer, and as he was waiting for a response, he told Blankenship that he appeared to match the description of another suspect. Crouch was concerned about weapons, and asked Blankenship to stand and raise his arms. As Blankenship did so, his left hand moved toward his waistband, and Crouch handcuffed him. He checked the area Blankenship had been reaching for, and found a plastic bag filled with money in the waistband of Blankenship's pants. Crouch asked Blankenship where he found the bag, and Blankenship said "in the alley." Another officer arrived, and the three returned to the bank. Pearson identified Blankenship as the man he had seen at the entrance to the alley, who had been stuffing something down the front of his pants.
 
 
 7
 Meanwhile, Shurtz had found and was watching Stranger, who had gone into a phone booth and then ran from it onto a bus. Shurtz followed the bus, and then heard over his scanner that an officer was going to the phone booth area. Shurtz returned to the phone booth area, gave the officer the bus number, and the officer went after the bus. Shurtz followed, the officers pulled over the bus, and Shurtz identified Stranger as the man who had been in the phone booth. One officer patted down Stranger, and found a large amount of money in Stranger's pants pockets.
 
 
 8
 During an interview at the police department, Stranger said that he and Blankenship were running low on cash, and that Blankenship suggested that they rob a bank.
 
 
 9
 Stranger consented to a search of the hotel room where he had stayed the night before with Blankenship. The police found a green canvas bag, with various items, including a notepad, in it. As analyzed at an FBI laboratory, impressions on the first page of the notepad read, "This--a robbery--put all money in bag--no alarms and no bombs or I start shooting with you." Portions of a second note read, "This is a robbery. No alarms, dye packs, ... starting with you." May 12, 1993 Tr. at 54. Blankenship's fingerprint was found on the inside cover of the notepad; three other prints were Stranger's.
 
 
 10
 A clerk at a novelty store in a mall in Moline remembered helping Stranger and Blankenship between 11:00 and noon on August 28. Stranger bought a baseball cap, and the two also picked out sunglasses, for which Stranger paid. The cash register tapes show purchase times of 11:33 for the baseball cap and 11:35 for the two pairs of sunglasses. Stranger wore the baseball cap and one pair of the sunglasses while robbing the bank.
 
 
 11
 A clerk at a department store in the same mall remembered that Blankenship purchased a dress shirt between noon and 1:00. Stranger wore the shirt while robbing the bank. Investigating officers found the baseball cap, one pair of sunglasses, and the dress shirt under two vehicles parked behind a store located next to the bank.
 
 
 12
 In argument, the government portrayed Blankenship as the planner of the robbery, with Stranger acting to physically carry out the plan. The government also introduced evidence regarding a robbery which occurred at State Savings Bank in Columbus, Ohio on August 24. Stranger was later identified as the man who gave a teller a threatening note, took back the note, and took a bag filled with money from the teller. He wore a baseball hat and sunglasses. Blankenship was in Columbus at the same time.
 
 
 13
 Stranger, with somewhat confusing testimony, explained that he met Blankenship in Kansas about two weeks before he was arrested, and that they hitchhiked to Alabama; he did not go to Ohio with Blankenship. During cross examination, however, the following discussion took place:
 
 
 14
 [Question:] Mr. Stranger, are you sure you have no recollection of going to Ohio with the defendant, Mr. Blankenship?"
 
 
 15
 [Answer:] Yeah, briefly.
 
 
 16
 [Question:] How briefly?
 
 
 17
 [Answer:] Well, I guess enough for robbing a bank.
 
 
 18
 May 12, 1993 Tr. at 140.
 
 
 19
 Stranger also testified that he wrote the Moline robbery note, and that Blankenship did not know he was going to rob the bank; at a tavern, he told Blankenship he was going to rob a bank, and Blankenship did not believe him. Stranger subsequently explained that the two men went together to the bank from the tavern, and that before he went into the bank, they agreed to meet later at the motel where they were staying to split the money.
 
 
 20
 Blankenship testified that in August 1992, he met Stranger in Utah. Stranger paid for bus tickets, meals and motels as the two travelled by bus together to Alabama, Columbus, Ohio, Indianapolis, and then Moline.
 
 
 21
 When the two arrived in Columbus, they went to a bar in the bus station. After Blankenship returned from attempting to call his cousin who lived in Columbus, Stranger was gone, and did not return for approximately twenty-five minutes. When Stranger reappeared, he said he was going to Indianapolis, but Blankenship wanted to stay to see his cousin. Stranger gave Blankenship $300 for a motel room and a bus ticket to Indianapolis, and then left on a bus for Indianapolis. That night, Blankenship visited with his cousin and her husband. He left the next day to meet Stranger in Indianapolis. They stayed for a day or two and then took a bus to Moline.
 
 
 22
 Blankenship further testified that he bought the dress shirt at the mall because he needed something to wear while doing laundry when visiting his parents, who live in Moline. Blankenship then purchased a pocket atlas at a bookstore; the receipt shows a purchase time of 12:39. When he left that store, Stranger was in the novelty store; he started to walk out with a hat and a pair of sunglasses, saying he was going to buy them but no one was around. Stranger eventually paid for the items.
 
 
 23
 Blankenship and Stranger then went to a bar in downtown Moline. Blankenship testified that he did not hear Stranger talk about robbing a bank. After they had been there about fifteen minutes, Stranger left. Blankenship assumed he was going to use the restroom. Blankenship stayed approximately ten or fifteen minutes more, and then left to look for Stranger.
 
 
 24
 As Blankenship was walking around downtown Moline looking for Stranger, Stranger saw and caught up with him. Stranger handed Blankenship a bag, Blankenship opened it, saw it was filled with money, and asked where he got it. Stranger said not to worry about it, and to put the bag away. Stranger then left, telling Blankenship not to follow. The two accidentally ran into each other, and then split up again. While Blankenship was sitting at a bus stop, Crouch approached him and his arrest followed. A twenty dollar bill was found in Blankenship's wallet which matched money stolen from the bank in Columbus. Blankenship testified that he did not know that Stranger had robbed a bank in Ohio.
 
 II. DISCUSSION
 A. Evidence of the Ohio Bank Robbery
 
 25
 Blankenship argues that the district court erred when it allowed the evidence regarding the Ohio bank robbery. The court permitted the evidence pursuant to Rule 404(b) of the Federal Rules of Evidence for the limited purpose of showing that Blankenship acted in the absence of mistake or accident.[1] The evidence also tended to show a plan (in that the modus operandi was similar between the two robberies) and an association of Blankenship with Stranger at a time close to the events in Moline.
 
 
 26
 Evidence is admissible under Rule 404(b) only if
 
 
 27
 (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence shows that the other act is similar enough and close in time to be relevant to the matter in issue; (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act;[2] and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.[3]
 
 
 28
 United States v. Wilson, 31 F.3d 510, 514-515 (7th Cir.1994).
 
 
 29
 We review the district court's decision to admit the evidence regarding the Ohio robbery for an abuse of discretion. United States v. Roberts, 22 F.3d 744, 751 (7th Cir.1994), petition for cert. filed, (U.S. Oct. 4, 1994) (No. 94-6356). Here, the district court ruled only after reviewing the parties' briefs and hearing arguments on several occasions regarding the matter, and ultimately stated "I am making the finding that there's sufficient basis for them [the jury] to believe that he [Blankenship] may have aided and abetted him [Stranger], which is consistent with Huddleston...." May 12, 1993 Tr. at 14.
 
 
 30
 Even if we were to determine that the admission of the evidence regarding the Ohio bank robbery was error under Rule 403 of the Federal Rules of Evidence, any such error was harmless. An error is harmless if it "did not substantially affect the jury's decision." United States v. Rivera, 6 F.3d 431, 442 (7th Cir.1993), cert. denied, 114 S.Ct. 1098 (1994). The evidence of the purchases of goods used in the Moline robbery, the division of the proceeds, and the evasive activity of Blankenship and Stranger, make a strong circumstantial case, and after reviewing the trial transcript, we conclude that any error in allowing the jury to hear evidence regarding the Ohio robbery was harmless.
 
 B. Jury Instruction
 
 31
 The district court instructed the jury as follows:
 
 
 32
 You have heard evidence of acts of the defendant or one who he may have aided or abetted other than those charged in the indictment. You may consider this evidence only on the question of motive, preparation, plan, knowledge, identity, absence of mistake or accident. This evidence is to be considered by you only for this limited purpose.
 
 
 33
 May 13, 1993 Tr. at 45. This instruction is based on the Seventh Circuit Pattern Jury Instruction 3.08, "Proof of Other Crimes or Acts." Blankenship argues that this instruction is erroneous because it assumes that Blankenship committed an act (aiding and abetting the Ohio robbery), rather than instructing the jury that it must first find that Blankenship committed the act before considering the evidence for 404(b) purposes.
 
 
 34
 Blankenship had proposed a substitute instruction, based on an Iowa uniform instruction. As the district court correctly noted, there no longer is a requirement for clear and convincing proof[4]; Blankenship's proposed instruction required "clear proof," and therefore was not a correct statement of the law.
 
 
 35
 If the instructions given a jury "as a whole treat a case fairly and accurately, we will not disturb them on appeal." United States v. Walker, 25 F.3d 540, 546 (7th Cir.), cert. denied, 63 U.S.L.W. 3312 (U.S. Oct. 17, 1994) (No. 94-5970). We conclude that there is no reversible error with respect to the district court's limiting instruction on the 404(b) evidence.
 
 
 36
 Accordingly, the conviction of Bobbie Joe Blankenship is AFFIRMED.
 
 
 
 [1]
 Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...."
 
 
 [2]
 This third point comes from Huddleston v. United States, 485 U.S. 681, 685 (1988), where the Supreme Court held that a trial court may admit relevant 404(b) evidence "if there is sufficient evidence to support a finding by the jury that the defendant committed the similar act." The Seventh Circuit had previously required that 404(b) evidence be clear and convincing. See United States v. Shackleford, 738 F.2d 776, 779 (7th Cir.1984)
 
 
 [3]
 This fourth point comes from Rule 403 of the Federal Rules of Evidence, which requires a judge to exclude relevant evidence if "its probative value is substantially outweighed by the danger of unfair prejudice."
 
 
 [4]
 See footnote 2