UNITED STATES of America,
Plaintiff–Appellee,

v.

David HERNANDEZ, Defendant–
Appellant.

No. 95–1882.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 12, 1996.

Decided May 21, 1996.

Barry Rand Elden, Chief of Appeals, Mark Filip (argued), Office of the U.S. Atty., Crim-inal Appellate Division, Chicago, IL, for Plaintiff–Appellee.

Camille B. Conway, Lynn C. Hartfield (argued), Office of the Federal Defender Program, Chicago, IL, for Defendant–Appellant.

Before POSNER, Chief Judge, BAUER and KANNE, Circuit Judges.

BAUER, Circuit Judge.

A jury convicted David Hernandez of knowingly and intentionally possessing with intent to distribute cocaine and heroin in violation of 21 U.S.C. § 841(a)(1). Hernandez challenges two of the district court's evidentiary rulings and its refusal to quash the venire prior to trial. We affirm.

## BACKGROUND

A drug interdiction task force operating at O'Hare International Airport received a tip that a suspected drug courier would be arriving on American Airlines Flight 1390. Not surprisingly, a man fitting the exact description (Hernandez, of course) deplaned in Chicago. The agents followed Hernandez to the baggage claim area where he found his luggage and attempted to leave the airport. The agents approached Hernandez and, after informing him that he was free to leave, began questioning him. He told them that he had just flown in from Los Angeles but was unable to produce his ticket because he had lost it. He then denied that the suitcase he was carrying belonged to him. The agents reminded him that they had watched him carefully select the bag from the baggage carousel, but he insisted that the bag was not his. All the while, he was visibly shaking and sweating. The agents took the suitcase and Hernandez proceeded to the baggage service desk where he claimed that he had lost his luggage. His claim was not processed however, because he had "lost" his ticket, baggage claim, and boarding pass, and because no Hernandez was listed on the passenger log. Shortly thereafter, the agents obtained a search warrant and discovered two kilograms of cocaine and 100 grams of heroin in the suitcase.

During voir dire of prospective jurors prior to trial, several venire members, responding to standard voir dire questions, raised a variety of concerns or frustrations about the criminal justice system. Some of these venire members were excused for cause. Hernandez moved to quash the entire venire on the ground that the inflammatory comments regarding the judicial system had tainted the remaining panel members. The district court denied the motion, finding that any statements made "would not prevent the other jurors from being fair and impartial in the trial of the case."

At trial, the court permitted the government to introduce Hernandez' prior arrest in 1993 during which a Customs Inspector stopped Hernandez at the United States border and seized 42.9 pounds of marijuana from his car. That arrest ultimately resulted in a guilty plea to a misdemeanor marijuana possession charge. Hernandez objected to this evidence as inadmissible under Fed.R.Evid. 404(b). The judge overruled the objection and admitted the evidence for the purpose of showing "proof of intent and knowledge" as well as "absence of mistake."

Also at trial, the government moved to prevent Hernandez from questioning a government witness about a prior civil case. Clay Searle, the Los Angeles Police Officer who had given the drug interdiction task force the tip about Hernandez, and whose sole testimony would be that he observed Hernandez sitting in a certain seat on the airplane, had been a losing defendant in an earlier civil rights lawsuit. *Morgan v. Woessner*, 997 F.2d 1244 (9th Cir.1993), *cert. dismissed*, —— U.S. ——, 114 S.Ct. 671, 126 L.Ed.2d 640 (1994). Hernandez sought to cross-examine this officer about the *Morgan* case in order to show his lack of competence as an agent and his lack of credibility. The district court granted the government's motion and refused to allow Hernandez to cross-examine the officer about *Morgan*. In particular, the court found that *Morgan* was irrelevant to the case at hand and was inadmissible under Fed.R.Evid. 403(b) because it would "invit[e] the jury to have unfair prejudice and to speculate, guess, and conjecture,

as opposed to anything that would have probative value."

## ANALYSIS

Hernandez raises three issues. First, he argues that the district court erred in refusing to quash the entire venire because of what he characterizes as inflammatory statements made by certain venire members. We review that claim for abuse of discretion. *United States v. Knipp*, 963 F.2d 839, 845 (6th Cir.1992) (citation omitted). Next, Hernandez claims that the district court improperly admitted evidence of Hernandez' prior crime in violation of Fed. R.Evid. 404(b). We review this claim for abuse of discretion. *United States v. Wilson*, 31 F.3d 510, 514 (7th Cir.1994). Finally, Hernandez argues that the district court improperly limited cross-examination of a prosecution witness. The question of which standard of review applies to this issue is somewhat complicated so we begin with it.

### A. *Limitation on Cross–Examination of Officer Searle*

The Sixth Amendment guarantees criminal defendants the right to cross-examine witnesses. *Ohio v. Roberts*, 448 U.S. 56, 62–64, 100 S.Ct. 2531, 2537–38, 65 L.Ed.2d 597 (1980). Nevertheless, the district court "retains broad discretion in limiting the extent and scope of cross-examination." *United States v. Valles*, 41 F.3d 355, 359 (7th Cir.1994). As a general matter, we review a district court's limitation of cross-examination for abuse of discretion. *United States v. Jackson*, 51 F.3d 646, 652 (7th Cir.1995). However, we review such limitations *de novo* where they directly implicate the Sixth Amendment right to confrontation. *Id.* Therefore, in determining the appropriate standard of review, we must "distinguish between the core values of the confrontation right and more peripheral concerns which remain within the ambit of the trial judge's discretion." *United States v. Saunders*, 973 F.2d 1354, 1358 (7th Cir.1992), *cert. denied*, 506 U.S. 1070, 113 S.Ct. 1026, 122 L.Ed.2d 171 (1993).

The assignment of the correct standard of review is further complicated by the parties'

contrasting characterization of the purpose of Searle's cross-examination. Hernandez claims that he wanted to cross-examine Searle about *Morgan* in order to reveal Searle's bias against racial and ethnic minorities. Exposing the bias of a witness is within the core values of the Confrontation Clause so, Hernandez argues, we must review his claim *de novo*. *See Valles,* 41 F.3d at 359.

The government argues that Hernandez failed to raise the specter of racial bias in the district court and therefore we should review the bias claim for clear error. *United States v. Olano,* 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). In the alternative, the government argues that Hernandez only sought to cross-examine Searle as to his general credibility, not his bias. If so, we would review for abuse of discretion because "[t]he general credibility of a witness is a matter collateral to the Sixth Amendment confrontation right." *United States v. Nelson,* 39 F.3d 705, 709 (7th Cir.1994). Finally, the government argues that it should prevail even if we review *de novo*.

■ Hernandez concedes that he did not raise explicitly the issue of Searle's alleged bias against racial and ethnic minorities. He argues that he tried to raise the issue, but was repeatedly interrupted by the district court and the prosecutor. We have reviewed the record carefully and conclude that Hernandez did not even propose to question Searle about his alleged bias. Instead, Hernandez sought to attack Searle's general credibility and competence as an agent. Accordingly, we will review his claim for abuse of discretion.[1] *See Nelson,* 39 F.3d at 709; *United States v. Dimas,* 3 F.3d 1015, 1019 (7th Cir.1993).

■ We begin our analysis with the well-settled proposition that trial judges "retain wide latitude to impose reasonable limits on cross examination based on concerns about harassment, prejudice, confusion of the issues ... or interrogation that is ... only marginally relevant." *United States v. Neely,* 980 F.2d 1074, 1081 (7th Cir.1992), *quoting Delaware v. Van Arsdall,* 475 U.S. 673,

679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986). Given our deferential review, we find that the district court did not err in limiting Searle's cross-examination.

■ We agree with the district court that the facts underlying *Morgan* were irrelevant to Searle's actual testimony. First, there was no finding in *Morgan* that Searle was biased against all racial and ethnic minorities. In addition, contrary to Hernandez' argument in this court, the Ninth Circuit did not make "specific findings that they did not believe Officer Searle's version of the [*Morgan*] facts." At most, *Morgan* may raise an inference that Searle might have been biased against African–Americans. That does not mean that Searle was out to get all non-whites.

Regardless, in granting the government's motion *in limine* regarding Searle, the district court stressed repeatedly that Searle would be testifying to the limited facts of his personal observation on the airplane. In fact, he would not even be identified as a police officer. Hernandez did not object to this latter limitation, ostensibly because he did not want the jury to know that the LAPD considered him a suspected drug courier. Given the limited scope of Searle's testimony, the facts of *Morgan* were irrelevant. Or as the district court put it: "Talk about a red herring. It's crimson.... And certainly under a 403 balancing test, you are inviting the jury to have unfair prejudice and to speculate, guess and conjecture...."

The district court emphasized that Hernandez was free to cross-examine Searle on any other matters, if relevant. As it turns out, Hernandez did not ask Searle *any* questions on cross-examination. He claims this was a result of unfair limitation on his right of confrontation. The district court's limitation of the cross-examination was proper.

B. *Admission of "Other Acts" Evidence Under Rule 404(b)*

Hernandez next argues that the district erroneously admitted evidence of Hernandez'

---

1. Because Hernandez does not press his bias argument independently of his claim that he raised bias in the district court, we need not even

apply clear error review to the bias issue. *United States v. Benson,* 67 F.3d 641, 644 n. 1 (7th Cir.1995).

prior drug arrest and conviction pursuant to Fed.R.Evid. 404(b). Rule 404(b) provides that "other acts" evidence is inadmissible to show that the defendant has a bad character and propensity to commit crime and that he acted consistently with that propensity or character. *Neely*, 980 F.2d at 1078. Evidence of "other acts" may be admitted, however, to establish "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R.Evid. 404(b).

■ We apply a four-part test in reviewing the admissibility of 404(b) evidence. *Wilson*, 31 F.3d at 514–15. First, the evidence must be directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged. Second, the "other act" must be similar to the charged conduct and be close enough in time to be relevant to the matter at issue. Third, the evidence must be sufficient to support a jury finding that the defendant committed the similar act. Finally, the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice. *Id.*

■ Hernandez takes up the cudgels on three of the four parts; he concedes that he committed the purportedly similar act. Hernandez insists that the sole purpose of admitting the prior marijuana conviction was to show that he had a propensity for drug dealing. The government argues, and the district court agreed, that the evidence was relevant to show Hernandez' intent to distribute the drugs he possessed. We agree. We have oft held that "when a defendant is charged with a specific intent crime, the government may present other acts evidence to prove intent." *United States v. Curry*, 79 F.3d 1489, 1495 (7th Cir.1996).

Hernandez resorts to the dreaded slippery slope to argue that if this ruling is correct then all prior drug convictions will be admissible under Rule 404(b) in subsequent drug prosecutions. We give short shrift to this argument. First of all, as discussed above, we apply a four-part test in reviewing 404(b) admissibility. Satisfying the first part of the test does not guarantee admissibility. More importantly, the prior bad act may not be

just any drug crime, it must be relevant to showing intent or the other matters listed in Rule 404(b). Here, the Customs Official stopped Hernandez with 43 pounds of marijuana hidden in his automobile—clearly a distribution amount. That incident is relevant to show Hernandez' specific intent to distribute the large quantity of drugs in his suitcase. Furthermore, the prior possession also satisfied this part of the 404(b) test as bearing on lack of mistake because it tends to show that Hernandez "was not some hapless fool mistakenly caught up in an overzealous law enforcement action." *United States v. Kreiser*, 15 F.3d 635, 640 (7th Cir.1994).

Moving on to the other factors, we agree that Hernandez' prior conviction satisfied the similarity/proximity requirements. Proximity is a gimme given our prior holding that a period of seven years is sufficiently close in time for 404(b) purposes. *Kreiser*, 15 F.3d at 640–41. Similarity is tougher, but given our deferential standard of review, we concur in the district court's conclusion that the prior conviction was similar enough for 404(b) purposes. Different drugs were involved, but both incidents concerned distribution amounts of drugs and illicit transport. We will not disturb the district court's reasoned exercise of its discretion regarding this element.

■ Finally, we reject Hernandez' argument that the district court failed to weigh the probative and prejudicial value of the prior bad act evidence. The district court explicitly stated that "the probative value of the evidence is greater than it might be in another type of case and outweighs the prejudicial effect ... in this case." We have no reason to believe that the trial judge was just mouthing empty platitudes. The record amply demonstrates that the parties argued over this issue and that the district court carefully weighed the relevant factors. Furthermore, the district court instructed the jury both before and after the 404(b) evidence was admitted that it could be considered "only on the question of the defendant's intent, knowledge, absence of mistake, or accident as it relates to the charges in the indictment." Absent any substantial evidence to the contrary, we presume that the jurors followed their instructions. *Curry*, 79 F.3d at 1497. In sum, the district court

properly admitted the 404(b) evidence regarding Hernandez' prior drug conviction.

C. *District Court's Refusal to Quash Entire Venire*

Finally, Hernandez' argument that the district court erred by failing to quash the entire venire because of comments by several venire members is without merit. We review this claim for abuse of discretion and will reverse only if "manifest injustice" resulted from the judge's refusal to dismiss venire members who heard improper comments. *United States v. Jones,* 696 F.2d 479, 492 (7th Cir.1982), *cert. denied,* 462 U.S. 1106, 103 S.Ct. 2453, 77 L.Ed.2d 1333 (1983). It did not.

■ Hernandez focuses on five venire members who made "explicit comments to the effect that the judicial system was ineffective in apprehending and punishing offenders." In addition, fifteen venire members "spoke of their experiences related to crime victims, and not one affirmatively expressed satisfaction with the judicial resolution of the incidents." We have reviewed all of the pertinent statements and we agree with the district court's ruling that none of the statements prevented the other jurors from being fair and impartial.

Furthermore, after denying Hernandez' motion to quash, the district court asked all of the venire members whether any statement or event during voir dire would impair their ability to be fair. None of the venire members who responded · affirmatively remained on the venire. "Absent any reasons [beyond speculation] to suspect as untrue the juror's claims of ability to remain impartial despite exposure to improper … comment, the court should credit those responses." *United States v. Moutry,* 46 F.3d 598, 603 (7th Cir.1995). The district court did not abuse its discretion in denying the motion to quash the venire.

## CONCLUSION

For the foregoing reasons, Hernandez' conviction is

AFFIRMED.