In the
United States Court of Appeals
For the Seventh Circuit

Nos. 00-2269 & 00-2723

United States of America,

Plaintiff-Appellee,

v.

Mark Bogan and Tony F. Calhoun,

Defendants-Appellants.

Appeals from the United States District Court
for the Western District of Wisconsin.
No. 99 CR 91--Barbara B. Crabb, Chief Judge.

Argued April 10, 2001--Decided September 25, 2001


   Before Coffey, Rovner, and Diane P. Wood,
Circuit Judges.

   Coffey, Circuit Judge.  On September 16,
1999, a federal grand jury returned a
two-count indictment charging the
appellants Mark Bogan and Tony Calhoun,
prisoners at FCI-Oxford, a federal prison
in Adams County, Wisconsin, with using a
deadly and dangerous weapon to assault a
corrections officer, 18 U.S.C. sec.
111(a), and assaulting a corrections
officer with the intent to commit murder,
18 U.S.C. sec. 113(a). After a two-day
jury trial, the jury returned a verdict
of guilty on both counts. Bogan and
Calhoun appeal their convictions,
alleging a constellation of errors
throughout the proceedings. We affirm.

I.  Factual Background

   On September 6, 1999, Corrections
Officer Matthew Degenhardt conducted a
random cell inspection in the Waupaca
Housing Unit at FCI-Oxford, where Bogan
and Calhoun both were confined.
Degenhardt conducted the inspection
shortly after he began his shift at 4:00
p.m. while many inmates in the unit were
away on various work and activity
assignments in order that he might avoid
confrontations with the inmates. Noting
that Bogan was absent from his cell,
Degenhardt proceeded to search it. In the

cell, the corrections officer found three large coffee-creamer containers filled with sugar, two one-pound bags of unopened sugar, and more than two bags of brown sugar, all of which are commonly used to make intoxicants in prison and thus contraband. In addition, Degenhardt discovered a number of postage stamp booklets, commonly used as currency or barter in the purchase of prison-made intoxicants and also contraband. Degenhardt seized the contraband listed and returned to the officer station, which is located within the common area of the Waupaca Unit, and proceeded to inventory the confiscated items.

Officer Degenhardt commenced counting the stamps in the station, but before he could complete the task, he noticed that it was time for the inmates to return from their work and activity assignments. Officer Degenhardt placed the stamps in a desk drawer, locked the officer station, and waited near the housing unit's door, monitoring the inmates as they returned.

After the inmates had returned, Degenhardt returned to the officer station, in order to complete the inventory of the materials seized. Bogan approached Degenhardt at the station and told him that he wanted to talk, and at this time Degenhardt observed that Calhoun was standing nearby. A nearby inmate, Miquel Jackson, heard Bogan remark to another inmate that he was going to "steal on," or beat, Degenhardt unless Degenhardt returned the items seized from his cell.

Without responding to Bogan's request, Officer Degenhardt returned to the officer station and sat down at the desk. Bogan followed Degenhardt into the station. Once within the station, Bogan asked Degenhardt in a hostile tone, "where are my stamps?" Degenhardt did not reply. Bogan then picked up and threw the office chair across the room and dumped the seized sugar onto the desk. Concerned for his safety, Degenhardt activated his body alarm and twice told the control center that he needed immediate assistance. Bogan again demanded his stamps, and Degenhardt once again declined to respond. At this time, Bogan grabbed Degenhardt by the shirt and threw him to the floor. While ducking his head in an attempt to protect himself,

Degenhardt was able to observe Calhoun enter the station. Over the course of the next minute, Degenhardt received numerous blows to his head and face, resulting in cuts, bruises, tooth damage, as well as a fractured left-eye socket. The altercation ended when Bogan and Calhoun abruptly terminated their attack and fled the scene. Degenhardt later identified Bogan and Calhoun as the two prisoners who had violently assaulted him.

   During the attack, inmate Kelly Hilpipre had been sitting in a phone booth, approximately ten feet away from the officer station and observed the assault. Hilpipre saw the two men beat Degenhardt with a telephone and a clothes iron, though at the time of the incident he did not know the names of the prisoners involved in the attack. While having a telephone conversation with his family, which was tape recorded and later played for the jury, Hilpipre described the attack and exclaimed that "they're trying to kill him." During the investigation five photographs of inmates were exhibited to Hilpipre, one of which was of Calhoun and two of which were of Bogan. Hilpipre identified Bogan and Calhoun as the inmates he had observed assaulting and beating Officer Degenhardt. He further identified Bogan as the inmate who had assaulted Officer Degenhardt with a clothes iron. During Bogan's and Calhoun's trial, Hilpipre reaffirmed his identification of Bogan and Calhoun as the inmates involved in the attack upon Degenhardt. He went on to describe the severity of the attack and explained his tape-recorded exclamation in more detail, testifying that he believed that Bogan and Calhoun were trying to kill Degenhardt:

When I seen [sic] him being struck in the head and being subdued from the back and the repeated blows to the head by what I thought were deadly weapons, in my opinion that's when I realized that this wasn't just a fight or an ordinary, or if there is such a thing as an ordinary assault.

   Other physical evidence corroborated Hilpipre's and Degenhardt's identifications, including Calhoun's wrist watch with a broken wrist band, which was discovered by investigators in the officer station immediately following

the attack. Additionally, investigators found a blood-stained t-shirt bearing Bogan's name tag stuffed in a nearby trash can. DNA analysis confirmed that the blood on the t-shirt was Degenhardt's.

Ten days after the attack, a grand jury sitting in the Western District of Wisconsin indicted both Bogan and Calhoun with assaulting a corrections officer with a deadly weapon and indicted Bogan also with assaulting a corrections officer with the intent to kill. Prior to trial, Bogan and Calhoun moved to suppress the identification testimony of Hilpipre on the grounds that the photographic lineup had been unduly suggestive./1 Bogan moved to exclude Hilpipre's lay opinion testimony that the defendants were "trying to kill" Degenhardt, arguing that it did not meet the requirements of Federal Rule of Evidence 701. The court overruled the objection and admitted this testimony, finding that Rule 701 allowed a lay witness to provide an opinion regarding a defendant's intent. Furthermore, Bogan and Calhoun moved to exclude evidence that the sugar seized from their cell was used to make wine and the postage stamps were used in the prison as currency to purchase, among other things, prison-made wine. The district court also denied this motion, ruling that the evidence was relevant to supplying a motive for the defendants's assault on Officer Degenhardt and was not so prejudicial as to outweigh its significant probative value.

After a two-day trial, a jury convicted the defendants on all counts. During sentencing, the district court found, among other things, that the defendants had used a dangerous weapon (namely, the clothes iron), U.S.S.G. sec. 2A2.2(b)(2)(B), in the assault and had inflicted serious bodily harm upon Officer Degenhardt, U.S.S.G. sec. 2A2.1(b)(1)(B). Each guideline application resulted in a separate four-level upward adjustment in offense level, resulting in an eight-level total adjustment for each defendant. Based upon Bogan's and Calhoun's resulting adjusted offense levels and criminal history category, the court sentenced Bogan to a prison term of 125 months and Calhoun to a term of imprisonment of 120 months, to be served

consecutively to those terms that they were presently serving. The defendantsappeal.

II.  Issues

Bogan raises three issues in this appeal. Initially he contends that the trial court abused its discretion in admitting Hilpipre's testimony that he was "trying to kill" Degenhardt as set forth in Federal Rule of Evidence 701. Second, Bogan claims that the evidence was insufficient to sustain his conviction. Finally, Bogan claims that the trial judge committed error when she found at sentencing that Bogan had used a deadly weapon and furthermore that the court's finding that Degenhardt had sustained severe physical injury was also in error. Calhoun raises only one issue:/2 that the district court erred in admitting evidence pursuant to Federal Rule of Evidence 404(b) of his prior wine-making activity.

III.  Discussion

A.  Hilpipre's Opinion Testimony

Bogan initially contends that the trial court abused its discretion in admitting Hilpipre's exclamatory statement that he believed Bogan and Calhoun were "trying to kill" Officer Degenhardt. The decision of "'whether to admit testimony under Rule 701 is committed to the sound discretion of the trial court and a ruling will not be reversed absent a finding that the trial court abused its discretion.'" United States v. Stormer, 938 F.2d 759, 761 (7th Cir. 1991) (quoting United States v. Towns, 913 F.2d 434 (7th Cir. 1990)) (internal citations omitted). A determination made by a trial judge regarding the admissibility of evidence "'is treated with great deference because of the trial judge's first-hand exposure to the witnesses and the evidence as a whole, and because of [her] familiarity with the case and ability to gauge the likely impact of the evidence in the context to the entire proceeding.'" United States v. Wash, 231 F.3d 366, 371 (7th Cir. 2000) (quoting United States v. Torres, 977 F.2d 321, 329 (7th Cir. 1992)).

Rule 701 of the Federal Rule of Evidences provides:

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical or other specialized knowledge within the scope of Rule 702.

Bogan does not contest the fact that Hilpipre was able to clearly view the altercation in the officer station and also that his opinion was rationally based on his observation of the incident. Similarly, Bogan also does not challenge the court's ruling that Hilpipre's exclamation was helpful to the jury. Bogan's acknowledgments thus satisfy the requirements of Rule 701 as previously stated. Bogan's claim that the testimony should have been excluded rests upon a novel, though unconvincing, argument. The gist of Bogan's argument is that Hilpipre's statement would be too helpful to the jury--that Hilpipre himself concluded that Bogan intended to kill Degenhardt, and thus did not allow the jury to draw that conclusion for itself.

According to Bogan's theory, then, any statement describing a third person's observations that forms the basis for a conclusion regarding a defendant's thoughts and motivations would be presumptively inadmissible. Bogan offers no case law in support of his theory that lay opinions regarding mental states are presumptively inadmissible. Indeed, such an argument runs contrary to case law precedent. We have previously held that "lay opinion testimony as to the mental state of another is indeed competent under [Rule 701]." United States v. Guzzino, 810 F.2d 687, 699 (7th Cir. 1987); see also Bohannon v. Pegelow, 652 F.2d 729, 731-32 (7th Cir. 1981).

Bogan offers another reason in support of his argument that the experienced and competent trial judge abused her discretion in admitting Hilpipre's statement. Bogan speculates that while Hilpipre was speaking on the phone he realized that his conversation was being recorded, and that, as he observed the attack, Hilpipre consciously decided to

proclaim that Bogan was "trying to kill" Degenhardt in order that it might later help him to strike a bargain with the government to reduce his sentence in exchange for his testimony. Bogan's speculation borders on the fantastic. To suppose that in the midst of an observation of a violent altercation where two inmates are observed savagely attacking a prison guard, the observing witness would have the presence of mind to think calmly and rationally not about the attack itself, but rather about how he might manipulate the system in an attempt to reduce his sentence simply lacks even a scintilla of substantiation in the record. Ultimately, the decision as to admissibility of Hilpipre's statement lies within the sound discretion of the trial judge. Wash, 231 F.3d at 371. We are confident that had Hilpipre truly been attempting to manipulate the system, as Bogan speculates, that the trial judge would have uncovered the ruse because she had the opportunity and ability (gained from years of trial experience) to gauge Hilpipre's credibility by hearing his answers as well as observing his "facial expressions, tone of voice, eye contact, posture and body movements," all of which are not contained in the cold pages of an appellate record. United States v. Woods, 233 F.3d 482, 484 (7th Cir. 2000). Accordingly, Bogan's contention is meritless and we hold that the trial judge did not abuse her discretion in admitting Hilpipre's statement.

B.  Evidence of Wine-Making Activity

  Calhoun argues that the district court committed error in permitting Degenhardt to testify about the defendants's wine-making activities. Calhoun objected not only to Degenhardt's testimony that he seized intoxicants from their cell in May 1999, but also evidence of the September 1999 seizure that precipitated the beating as well as Degenhardt's explanation that the sugar seized is commonly used by inmates to make intoxicants and that postage stamps, in the amount seized, are commonly used by inmates as barter to purchase intoxicants. We examine each argument in turn, keeping in mind that we review the trial judge's ruling to admit the disputed evidence under an abuse of

discretion standard. United States v. Denberg, 212 F.3d 987, 992 (7th Cir. 2000).

1.  Evidence of the May 1999 Seizure

Under Federal Rule of Evidence 404(b), "evidence of other misconduct is not admissible to demonstrate that the defendant acted in conformity therewith, but may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, or identity." United States v. Lloyd, 71 F.3d 1256, 1264 (7th Cir. 1995). In determining the admissibility of Rule 404(b) evidence we utilize the familiar four-part test and examine whether:

(1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue, (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act, and (4) the evidence has probative value that is not substantially outweighed by the danger of unfair prejudice.

Denberg, 212 F.3d at 992-93.

Calhoun has failed to support his contention that the district court abused its discretion in admitting Officer Degenhardt's testimony about the May 1999 seizure with case law, much less citation to the record. Calhoun contends that there is "no identity of the seizure of the wine-making material with the assault." But this statement defies reasonable explanation. The government's theory of the case was that Bogan and Calhoun were cellmates at the time Degen hardt seized the intoxicants in May 1999 and were upset that Degenhardt had once again thwarted their underground wine-making and selling enterprise. According to the government's theory, Bogan and Calhoun hoped to prevent future interference by Degenhardt with a violent assault upon him. In other words, the May 1999 seizure explains Calhoun's motive for beating Degenhardt, for after all, the September 1999 seizure was from only Bogan's cell, not Calhoun's. Accordingly, Degenhardt's testimony regarding the May 1999 seizure satisfies the first prong of

the test.

Calhoun also alleges that the probative value of the evidence was substantially outweighed by its prejudicial effect. Again, Calhoun offers little in the way of case law in support of his conjecture. Instead, Calhoun merely argues that the evidence of prior wine making was prejudicial without ever offering an explanation for his assertion. United States v. McClellan, 165 F.3d 535, 550 (7th Cir. 1999) ("We repeatedly have made clear that perfunctory and undeveloped arguments . . . are waived [on appeal]") (citation omitted). In any event, we note that relevant evidence is inherently prejudicial. Lloyd, 71 F.3d at 1265. In this instance, the evidence of Degenhardt's seizure of the defendants's wine-making materials was exceedingly probative of Calhoun's motive to assist Bogan in the attack upon Officer Degenhardt. We remain unconvinced (as did the trial judge) that the evidence of the wine-making activity would serve to induce a jury to decide the case upon emotion, rather than upon the evidence presented. Accordingly, we are satisfied that the trial court carefully considered the admissibility of the May 1999 seizure and did not abuse her discretion in admitting Degenhardt's testimony.

2. Evidence of the September 1999 Seizure and Degenhardt's Explanations

Calhoun also asserts that evidence of the September 1999 seizure and Degenhardt's corresponding explanation of the importance of sugar and stamps in Bogan's and Calhoun's enterprise should have been excluded. We see no need to engage in our standard Rule 404(b) analysis to resolve Calhoun's meritless argument because it is clear from the record that the evidence of the September 1999 seizure was "intricately related" to the assault upon Officer Degenhardt. See United States v. Ryan, 213 F.3d 347, 349 (7th Cir. 2000) (dispensing with 404(b) analysis when evidence was intricately related to the offense charged in the indictment). This circuit has a well-established line of precedent that allows evidence of uncharged acts to be introduced at trial if the evidence is "intricately related" to the acts charged in the indictment. United States v. Gibson, 170 F.3d 673, 680 (7th Cir.

1999). Under the "intricately related" doctrine, the admissibility of Bogan's and Calhoun's wine-making turns on:

whether the evidence is properly admitted to provide the jury with a complete story of the crime on trial, whether its absence would create a chronological or conceptual void in the story of the crime, or whether it is so blended or connected that it incidentally involves, explains the circumstances surrounding, or tends to prove any element of, the charged crime.

United States v. Ramirez, 45 F.3d 1096, 1102 (7th Cir. 1995) (emphasis added) (internal quotations and citations omitted).

In the factual situation before us, the evidence of the wine-making activity of Bogan and Calhoun serves to complete and answer a conceptual void in the history of the crime. To the lay juror, most likely unfamiliar with the manufacturing of prison intoxicants and the currency of the prison black market, it would seem less than reasonable and likely that the mere confiscation of a small quantity of sugar and a few postage stamps would serve to provoke a violent assault and reaction of the magnitude testified to at trial. Indeed, a pall of incredibility might be cast upon the government's case if it claimed that two prisoners severely assaulted and beat a prison guard merely for confiscating such ordinary household items (sugar and stamps). It is only when the juror is informed of the panorama of events and past history of the entire picture of the production and sale of liquor in a prison setting that the violent attack after the confiscation of the sugar and stamps makes sense. In other words, the testimony of Degenhardt regarding Bogan's and Calhoun's wine-making activity completed the story of the crime charged and was "necessary to enable the jury to fully understand and make sense of" their vicious attack upon Officer Degenhardt. Gibson, 170 F.3d at 682.

Calhoun further argues that their wine-making scheme was so different from the act of the charged crime that it should have been excluded. But we have never held that the uncharged criminal activity under the intricately related doctrine

must be identical to the charged activity. Indeed, in a similar case, we held that evidence of a previous sexual exploitation conviction was intricately related to the prosecution of an arson case because it was essential to tell a complete story and explain the defendant's motive. See United States v. Menzer, 29 F.3d 1223, 1233 (7th Cir. 1994) (defendant burned down dwelling where his wife slept to prevent her from reporting his ongoing sexual abuse of his children). As in Menzer, the evidence of Bogan's and Calhoun's wine-making activities (and prior confiscation of wine-making paraphernalia and proceeds) are "exceedingly probative as to [their] motive" to violently assault Officer Degenhardt, who had on two separate occasions thwarted their underground entrepreneurial scheme. Id. at 1234.

Calhoun also offers a weak and unconvincing argument in his attempt to demonstrate that the district judge abused her discretion in admitting the evidence of the defendants's wine-making. In his argument, Calhoun reaching for straws suggests that the government could have shown their motive to beat Officer Degenhardt simply by informing the jury that he had confiscated contraband from their cells, leaving out the details of what he confiscated and for what purpose the inmates used it. In short, he contends that while the evidence of their wine making might be relevant, it was too prejudicial. But, as we noted earlier, "'relevant evidence is inherently prejudicial . . . . Rule 403 was never intended to exclude relevant evidence simply because it is detrimental to one party's case; rather, the relevant inquiry is whether any unfair prejudice from the evidence substantially outweighs its probative value.'" Lloyd, 71 F.3d at 1265 (quoting Cook v. Hoppin, 783 F.2d 684, 689 (7th Cir. 1986)) (emphasis in original). "'Evidence is unfairly prejudicial only if it will induce the jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented.'" Denberg, 212 F.3d at 994 (quoting United States v. Long, 86 F.3d 81, 86 (7th Cir. 1996)). In this instance, the evidence of Bogan's and Calhoun's wine-making "gave the jury a more, not less, accurate picture of the circumstances" surrounding the charged crime, and the trial judge

did not abuse her discretion to admit it. Ramirez, 45 F.3d at 1103.

## C. Sufficiency of the Evidence

At the conclusion of the government's case in chief and also at the conclusion of the trial, Bogan moved for judgement of acquittal, contending that the evidence was insufficient to establish his guilt. Bogan renews his argument here. A challenge to the sufficiency of the evidence to support a conviction poses a "nearly insurmountable burden." United States v. Frazier, 213 F.3d 409, 415 (7th Cir. 2000). When reviewing a sufficiency of the evidence claim, we view the evidence and all reasonable inferences that can be drawn from it in the light most favorable to the government. Id. Only where the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt, may an appellate court overturn the verdict. United States v. Lundy, 809 F.2d 392, 396 (7th Cir. 1987).

Bogan's argument fails before it can get off the ground. Bogan contends that "so many varying stories were presented to the jury regarding the altercation . . . that no reasonable juror could have concluded from the evidence that Bogan forcibly assaulted Degenhardt through the use of deadly or dangerous weapons." Bogan points out that another inmate, Miquel Jackson, also allegedly witnessed the altercation and testified that he never saw Bogan strike Degenhardt with a weapon, contrary to Degenhardt's and Hilpipre's testimony. Obviously this is a credibility determination, which is solely within the province of the jury. United States v. Jefferson, 252 F.3d 937, 942 (7th Cir. 2001); United States v. Pulido, 69 F.3d 192, 205 (7th Cir. 1995).

In this case overwhelming evidence existed linking Bogan to the attack. Degenhardt testified that Bogan threw him to the floor and violently assaulted him when he was down. Degenhardt's testimony was corroborated by the testimony of an inmate who observed the attack from ten feet away, Hilpipre. Furthermore, both Degenhardt's and Hilpipre's testimony was corroborated by the physical evidence found by the investigators, which included a broken iron found in the

officer station, Bogan's t-shirt covered with Degenhardt's (DNA identified) blood found in a trash can shortly after the incident, and Calhoun's broken wrist band and watch found in the officer station. There is more than sufficient evidence to support the jury's verdict, and Bogan's argument that this evidence is insufficient is without merit.

D.   Sentencing Enhancement

   Bogan lastly appeals two sentencing enhancements imposed in the trial court. Initially, Bogan argues that the district court erred in adjusting his offense level upward by four levels for the use of a dangerous weapon during the assault. U.S.S.G. sec. 2A2.2(b)(2)(B) & sec. 1B1.1 cmt. n. 1(d) & (g). We review the district court's factual findings in support of sentencing determinations for clear error. United States v. Baker, 227 F.3d 955, 964 (7th Cir. 2000). Bogan again points to the testimony of inmate Jackson that Bogan only used his fists in the assault, instead of the iron. But Hilpipre clearly testified that Bogan used a clothes iron to beat Officer Degenhardt, and a broken clothes iron was found at the scene. The sentencing judge resolves credibility questions that arise during the sentencing hearing, and in this case she chose to believe Hilpipre and Degenhardt and not Jackson. The district court was entitled to creditHilpipre's version of the event rather than that of Jackson, and we see no reason to upset that credibility determination. What is more, the government charged Bogan with the use of a dangerous weapon as an element of the crime, and given the jury's determination of guilt beyond a reasonable doubt, the court's finding to the same at sentencing cannot be clearly erroneous.

   Bogan also argues that the sentencing judge erred in concluding that Degenhardt suffered "serious bodily injury" within the meaning of the guidelines, and therefore the district court erred in imposing a four-level upward adjustment in his offense level. U.S.S.G. sec. 2A2.1(b)(1)(B). Because Bogan argues that the district court misinterpreted the Sentencing Guidelines, our review is de novo. United States v. Phillips, 239 F.3d 829, 847 (7th Cir. 2001). The Guidelines define "serious bodily injury" in

pertinent part as an "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." U.S.S.G. sec. 1B1.1, cmt. n. 1(j). The government submitted reports of Degenhardt's medical treatment, and Bogan admits that Degenhardt suffered lacerations requiring sutures, a fractured eye-socket bone, nerve damage to the left side of his face, ongoing emotional distress and migraine headaches, and the potential loss of three teeth, but contends that because Degenhardt did not "undergo a prolonged hospital stay . . . or surgical intervention" that he did not suffer a serious bodily injury. In the past we have held that where a defendant inflicted facial scars on the victim, the imposition of a six-level upward adjustment in offense level for "permanent or life-threatening bodily injuries" was warranted. See Phillips, 239 F.3d at 848. Given the undisputed nature of Degenhardt's injuries, we are convinced that Bogan's argument that the district court erred in finding that Degenhardt suffered "serious bodily injury" is without merit.

## IV.  Conclusion

We hold that the district court did not err in admitting either Hilpipre's lay opinion testimony or evidence of Bogan's and Calhoun's wine-making activity. Further, we hold that the evidence was more than sufficient to support the verdict against Bogan. Finally, we hold that Bogan's challenges to the trial court's sentencing determinations are without merit. Bogan's and Calhoun's convictions and sentences are AFFIRMED.

FOOTNOTES

/1 Before submitting their briefs, the defendants's attorneys notified the magistrate judge that they were withdrawing this motion, and the magistrate entered an order confirming the motion as being withdrawn and striking the briefing schedule.

/2 In his brief, Calhoun also raised the issue of whether the district court erred in admitting Hilpipre's identification of the defendants from a photographic lineup. At oral arguments, counsel admitted that Calhoun's trial counsel had waived

this issue when he withdrew his objection to the identification. Therefore, we need not address this issue.