[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 1, 2005
THOMAS  K. KAHN
CLERK

No. 04-15353
Non-Argument Calendar

_____

D.C. Docket No. 04-00011-CR-01-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RALEIGH CRAWFORD KELLEY, IV,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Southern District of Georgia

_____

**(August 1, 2005)**

Before DUBINA, BLACK and PRYOR, Circuit Judges.

PER CURIAM:

Raleigh Crawford Kelley, IV, appeals his 108-month sentence for

possession of 5 grams or more of cocaine base (crack), in violation of 21 U.S.C.

§ 844(a).  This indictment stemmed from an incident at Fort Gordon, Georgia, on

Sunday, August 3, 2003, when Kelley and his passenger, Mazo Ford Jones, attempted to enter the military base to buy beer. Because they did not have a proper identification sticker, military police ("MP") pulled them over into a search area. An MP thought that he detected an odor of marijuana in the car, so he conducted a search of the vehicle. During the search, the MP found several hundred rounds of different caliber ammunition in the vehicle's trunk. The MP then asked Kelley whether there was a weapon in the vehicle. Although Kelley did not immediately respond that there was a weapon in the car, he eventually told the MP that Jones had a firearm under the passenger seat. The MP then searched the car and found the firearm under the seat and the firearm's magazine in the glove box. The MP subsequently conducted a complete search of the vehicle and found, in the trunk, a bag that belonged to Kelley. In the bag was a tennis shoe that contained approximately 28 grams of crack cocaine. Kelley subsequently pled guilty to the above charge.

In addition to the crack cocaine possession charge, in January 1998, Kelley was convicted, in relevant part, of carrying a concealed weapon. In July 1998, Kelly was convicted of (1) possession of a firearm by a convicted felon, (2) possession of a firearm after being adjudicated delinquent, and (3) possession of a firearm while simultaneously possessing cocaine.

At sentencing, the district court imposed a two-level enhancement, under U.S.S.G. § 2D1.1(b)(1), for possessing a dangerous weapon. In so doing, the court stated that, given the fact that (1) Kelley knew that the gun was in the vehicle, (2) the gun and its magazine were in close proximity to one another, (3) there was a significant amount of cocaine in the trunk of the vehicle, (4) Kelley's previous firearm convictions demonstrated his familiarity with firearms and that he has them around when he possesses a controlled substance, and (5) there was a significant amount of ammunition in the trunk of his car, it was clearly probable that the gun related to his possession of the cocaine.

The court subsequently sentenced Kelley to 108 months imprisonment, the top of his Sentencing Guideline range, stating that it was troubled with Kelley's performance while on pretrial release, his lack of candor with the pretrial services officer, and his "attempt to manipulate his lawyer, the court, the magistrate judge, the probation officers and everybody else around him." The court went on to state that,

> Mr. Kelley is a repeat offender of offenses involving firearms and drugs. He is too clever. He is a manipulative person and the prospect of his having advanced computer expertise is one that I find somewhat chilling. I can't tell him what to learn or what not to learn, but I hope any potential employers in the future will look at his background very carefully if that is the kind of work he is going to be involved in.

3

In short I am taking into account . . . everything else I have come to know about Mr. Raleigh Kelley, IV, and I don't trust what he says. I am doubtful about his true intentions at all times. While I have given him acceptance of responsibility I have done so for reasons which do not [] amount to bestowing a merit badge on him.

On appeal, Kelley contends that the district court erred in (1) attributing to him the two-level enhancement for possessing a dangerous weapon, and (2) sentencing him pursuant to a mandatory guidelines scheme, in violation of *United States v. Booker*, 543 U.S. __, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005).

## I.  Firearm Enhancement

On appeal, Kelley asserts that the district court erred in assessing a two-level firearm enhancement, pursuant to U.S.S.G. § 2D1.1(b)(1), for possessing a dangerous firearm because the person who actually possessed the firearm had no knowledge that Kelley had cocaine in his suitcase. Thus, it was clearly improbable that the firearm was connected to his drug offense.

We review for clear error the district court's findings of fact when it enhances a defendant's sentence in cases involving U.S.S.G. § 2D1.1(b)(1), and review the application of the sentencing guidelines de novo. *United States v. Gallo*, 195 F.3d 1278, 1280 (11th Cir. 1999).

Under the guidelines, a defendant should receive a two-level enhancement if he possessed a firearm. U.S.S.G. § 2D1.1(b)(1). The commentary to § 2D1.1

4

states that "[t]he adjustment should be applied if the [firearm] was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1(b)(1), cmt. n.3. The government has the burden of proving that "the firearm was present at the site of the charged conduct." *United States v. Hall*, 46 F.3d 62, 63 (11th Cir. 1995). Then the burden shifts to the defendant to demonstrate that "a connection between the firearm and the offense is clearly improbable." *Id.*

In the case at bar, although Kelley claims that the firearm could not be connected to his drug offense because Jones, the owner of the gun, was unaware of the crack cocaine in the trunk, Kelley's arguments are misguided. Kelley admitted that he was aware that he had approximately 28 grams of crack cocaine and several hundred rounds of ammunition in the trunk of his vehicle. He also knew that there was a gun under the passenger seat, only a few feet away from him, and the gun's magazine was located in the glove box, only a few feet from the gun. Since 28 grams of crack cocaine is consistent with a distribution amount, and not merely a personal amount, it further supports the district court's decision that it was not clearly improbable that the firearm was connected to Kelley's drug offense. *See United States v. Samiento*, 744 f.2d 755, 761 ("Intent to distribute may be inferred form the amount of cocaine involved."); *United States v. Wash*,

231 F.3d 366, 371 (7th Cir. 2000) (noting that 5.4 grams of crack cocaine is a distribution amount). Given Kelley's knowledge of the drugs in his trunk, the amount of drugs in the trunk, the location of the firearm, and the location of the gun's magazine, in addition to Kelley's previous controlled substance offense that involved the use of a gun, it was not *clearly* improbable that the firearm was connected to Kelley's drug offense. *See Hall*, 46 F.3d at 63. Accordingly, the district court did not clearly err in applying the enhancement.

## II. Booker Claim

Kelley further contends that the district court erred, under *Booker,* in sentencing him under a mandatory guidelines system. In *Blakely v. Washington*, the Supreme Court held that, under the state of Washington's mandatory sentencing guidelines system, the imposition of a sentencing enhancement based upon facts neither admitted by the defendant nor found by the jury violated the defendant's Sixth Amendment right to a jury trial. *Blakely*, 542 U.S. 296, __, 124 S. Ct. 2531, 2534-2538, 159 L. Ed. 2d 403 (2004). In *Booker*, the Supreme Court extended this holding to the federal Sentencing Guidelines. *Booker*, 543 U.S. at ___, 125 S. Ct. at 755. Based on the Supreme Court's holding, we have stated that there could be two *Booker* errors: (1) a Sixth Amendment error – the error of imposing a sentencing enhancement based on judicial findings that go beyond the

6

facts admitted by the defendant or found by the jury, and (2) a statutory error – the error of being sentenced under a mandatory guidelines system. *United States v. Shelton*, 400 F.3d 1325, 1330-31 (11th Cir. 2005).

Because Kelley's sentence was enhanced under a mandatory guidelines system based on facts found by the judge and not admitted by him, Kelley's right to a jury trial was violated. *See United States v. Paz*, 405 F.3d 946, 948 (11th Cir. 2005). Kelley raised an objection to the enhancement in the district court; thus, we review the sentence de novo. *Id.* However, if this error is harmless, we must disregard it. *Id.* "To find harmless error, we must determine that the error did not affect the substantial rights of the parties." *Id.* (quotation omitted). Where "the error is harmless beyond a reasonable doubt[,]" it must be disregarded. *Id.* (quotation omitted).

When a defendant raises an objection to the mandatory nature of the guidelines, we review for harmless error. *United States v. Mathenia*, 409 F.3d 1289, 1291(11th Cir. 2005). While this is a less stringent harmless error standard than that applied to a constitutional *Booker* error, a statutory *Booker* error "is harmless if, viewing the proceedings in their entirety, a court determines that the error did not affect the [sentence], or had but very slight effect. If one can say with fair assurance . . . that the [sentence] was not substantially swayed by the

7

error, the [sentence] is due to be affirmed even though there was error." *Id.* at 1292 (internal quotation omitted). In the present case, there was a non-constitutional *Booker* error because the district court sentenced Kelley under a mandatory guidelines system. *See Shelton*, 400 F.3d at 1330-31. For the foregoing reasons, we find both the statutory and constitutional *Booker* errors harmless.

Here, the record demonstrates that the court's statutory error did not affect, or had but a slight effect, on Kelley's sentence. *See United States v. Gallegos-Aguero*, 409 F.3d 1274, 1277 (11th Cir. 2005) (finding sentencing the defendant under a mandatory guidelines scheme was harmless because (1) he was sentenced to the top of the guideline range, and (2) the district court considered sentencing the defendant to the maximum allowable under the statute of conviction). Moreover, with respect to the enhancement and constitutional error, "it is clear beyond a reasonable doubt that the [constitutional] error complained of did not contribute to the [sentence] obtained." *See Paz*, 405 F.3d at 948 (quotation omitted). Specifically, when it sentenced Kelley, the district court stated that Kelley was a "manipulative person" and his knowledge of computers was "chilling." The court further stated that it hoped that Kelley's future employers would look "very carefully" at Kelley's background. Furthermore, the court stated

8

that, although it gave him the acceptance of responsibility adjustment, it did not trust what Kelley said, and doubted his true intentions.

This language from the court, in addition to the court's sentencing Kelley to the top of the guideline range, suggests that Kelley's sentence was not "substantially swayed by the error," because it indicates that the district court was afraid that, when Kelley was released back into society, he would continue to commit controlled substance and firearm offenses, or that his knowledge of computers would lead to other criminal charges. Additionally, the court's comments also suggest that, if the guidelines were advisory instead of mandatory, the court would have given Kelley a higher sentence than what the guidelines required. The court's comments further indicate that "it is clear beyond a reasonable doubt" that the constitutional error of enhancing the sentence based upon facts neither admitted nor proven to a jury did not contribute to the sentence. Therefore, the errors by the district court in sentencing Kelley under a mandatory guidelines system and enhancing his sentence were harmless.

For the foregoing reasons, we affirm Kelley's sentence.

**AFFIRMED.**